No. 26-7050

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED
STATES, *et al.*,
APPELLANTS,

V.

DISTRICT OF COLUMBIA,
APPELLEE.

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**APPELLEE DISTRICT OF COLUMBIA'S PARTIAL OPPOSITION TO
APPELLANTS' MOTION TO EXPEDITE THIS APPEAL**

The District of Columbia partially opposes appellants' motion to expedite.

The District does not oppose appellants' request to file their opening brief and joint

appendix on or before June 8, to file their reply brief 21 days after the response brief,

or to schedule oral argument in October or November. *See* Mot. 1 n.1. Those are

standard, non-expedited deadlines. *See* Fed. R. App. P. 31(a).

But the District otherwise opposes appellants' motion, including their request

to prohibit extensions and to enter this case into the stand-by pool for oral argument.

As an initial matter, expedited review is unnecessary to resolve this appeal before

the end of the year (as appellants request), because even with reasonable extensions, briefing and argument could be completed as early as October. But even were that not so, appellants cannot satisfy this Court's standard for expedited review. They have not shown that the ordinary appellate process would cause irreparably injury because their speculative, unsubstantiated claims of economic harm misapprehend District law and ignore their own delays in this litigation. Nor can appellants show that the district court's decision is subject to substantial challenge given that more than a dozen other federal judges (and counting) have also rejected their atextual preemption claims. The motion to expedite should be denied.

## BACKGROUND

In 2022, the D.C. Council enacted the Clean Energy D.C. Building Code Amendment Act of 2022 (Clean Buildings Act), D.C. Act 24-528 (July 27, 2022). As relevant here, the Act prohibits the combustion of fossil fuels for the provision of thermal energy in certain types of newly constructed or substantially renovated buildings after December 31, 2026. *See* D.C. Code § 6-1453.01. This "net-zero-energy standard" applies only to "new construction" or "substantial improvements" of "covered buildings," which are defined as commercial buildings and residential buildings over three stories. *Id.* § 6-1453.01(a)-(b). The Act is expected to "produce substantial direct benefits for District residents" that will "outweigh the relatively limited costs of compliance." Clean Energy DC Building

2

Code Amendment Act of 2022, D.C. Council Report on Bill No. 24-420 (Comm. Rep.), at 6-8 (June 13, 2022), https://tinyurl.com/2evwmbns.[1]

Two years after the Clean Buildings Act was enacted, appellants filed this suit alleging that the Act was facially preempted by the Energy Policy and Conservation Act (EPCA), 42 U.S.C. § 6201 *et seq.* Mot. Ex. 2. EPCA's preemption clause states in relevant part that once a federal "energy conservation standard" is set "for any covered product, no State regulation concerning" the "energy efficiency" or "energy use" of "such covered product shall be effective with respect to such product[.]" 42 U.S.C. § 6297(c). EPCA defines "energy conservation standard" as a "performance standard" that measures the "minimum level of energy efficiency" or the "maximum quantity of energy use" of "a covered product, determined in accordance with test procedures prescribed under section 6293[.]" *Id*. § 6291(6)(A). It defines "energy efficiency" as "the ratio of the useful output of services from a consumer product to

---

[1]    The D.C. Council is currently considering legislation that would extend the Act's implementation date to December 31, 2027. The Fiscal Year 2027 Budget Support Act of 2026, tit. II, sub. tit. L, § 2112(a), The Net-Zero Energy Code Amendment Act of 2026 (April 14, 2026), https://tinyurl.com/4w5dmpkr; *see* D.C. Council, FY 2027 Budget Schedules, https://tinyurl.com/3jmdusjs. Also, certain provisions of the Clean Buildings Act have been temporarily amended until June 4, 2026, by the Net Zero Modification and Preservation Emergency Amendment Act of 2026, D.C. Act 26-275, §§ 3, 5 (Mar. 6, 2026), 73 D.C. Reg. 3779, 3781-82 (Mar. 13, 2026), https://tinyurl.com/4rnmszph. This opposition cites to the permanent version of the Clean Buildings Act because, as the district court noted, the temporary amendments do not affect the legal analysis, *see* Mot. Ex. 1 at 6 n.15.

the energy use of such product, determined in accordance with test procedures under section 6293[.]" *Id.* § 6291(5). And it defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293[.]" *Id.* § 6291(4).

The district court rejected appellants' preemption claim. Mot. Ex. 1 at 1-2. The court held that "EPCA preempts only laws that impose additional performance standards for appliances on top of federally established ones," as "a state or local regulation only conflicts with a federal energy efficiency or use standard where it affects the appliance's performance under 'simulat[ed]' test conditions[.]" *Id.* at 12, 20 (quoting *NRDC, Inc. v. Herrington*, 768 F.2d 1355, 1404 (D.C. Cir. 1985)). Yet the Clean Buildings Act "only regulates" whether an "appliance can be used in a particular context," not its "performance capacity" under simulated test conditions. *Id.* at 9. In reaching that conclusion, the court disagreed with *California Restaurant Association v. City of Berkeley* (*CRA*), 89 F.4th 1094 (9th Cir. 2024), which had "ignored" critical features of EPCA in finding a local regulation of natural-gas piping preempted, Mot. Ex. 1 at 13-15. The district court instead adopted Judge Friedland's dissent from the denial of rehearing en banc in *CRA*, recognizing that "the text is clear": "EPCA establishes certain national programs for conservation," but it does not "trample on the District's ability to pursue its own environmental goals where they do not contradict federal standards." *Id.* at 21.

**DISCUSSION**

The Court should deny the motion to expedite. To the extent appellants want this case resolved before the Clean Buildings Act's December 31, 2026 implementation date, expedition is unnecessary because the appeal could be briefed and argued by October, and decided before year's end, even on a non-expedited schedule. That is reason enough to deny the motion, especially given the current legislative proposal to extend the Act's implementation date to December 31, 2027, *see supra* note 1. But either way, appellants have not carried their burden to justify expedition. Parties seeking expedited review "must demonstrate that the delay will cause irreparable injury and that the decision under review is subject to substantial challenge." D.C. Circuit, *Handbook of Practice and Internal Procedures* 34 (2025). Appellants here have not demonstrated either requirement.

**I.      Appellants have not shown that the ordinary process of appellate review will cause irreparable injury.**

This Court imposes "a high standard for irreparable injury," and when alleged harms "are purely financial or economic, the barrier to proving irreparable injury is higher still, for it is well settled that economic loss does not, in and of itself, constitute irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted). The same is true of "ordinary compliance costs," which are also "typically insufficient to constitute irreparable harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir.

2005).  Indeed, unless the movant shows that it faces a nonrecoverable "financial injury" that is "so great as to threaten its continued existence," economic losses are not irreparable injury.  *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235 (D.C. Cir. 2025); *see Mexichem*, 787 F.3d at 555-56 (finding no irreparable harm where petitioners "failed to show any specific, identifiable [compliance] cost").

Appellants cannot clear that bar.  They contend that "expedition is warranted here" because "a faster resolution of this case" will "minimize the duration and magnitude" of the Clean Buildings Act's alleged "harm."  Mot. 5-7.  But that asks the wrong question and reaches the wrong answer.  Even if expedition might "minimize" a purported "harm," Mot. 7, that does not mean the established appellate process "will *cause irreparable* injury," D.C. Circuit *Handbook* 34 (emphasis added).  At bottom, appellants' motion reduces to the assertion that expedited review could put them in a *better* position financially, *see* Mot. 2, 4-7, which (even if true) is a far cry from suffering irreparable harm absent expedited review.  *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("The key word in this consideration is *irreparable*." (internal quotation marks omitted)).

The flaws in appellants' motion are compounded by the fact that their asserted "harms" appear to be solely "economic effects," such as "lost customers," "higher gas prices," "higher capital expenditures," and less "profitable" revenue streams without their "preferred" energy source.  Mot. 2, 4, 6.  But appellants fail to

differentiate these effects from "the type of mere economic loss which will not support a finding of irreparable injury." *Wisconsin Gas*, 758 F.2d at 675 (internal quotation marks omitted). Indeed, even were appellants' alleged losses "unrecoverable," Mot. 7, they have not shown that their magnitude will reach an irreparable level before this case can be decided on a non-expedited basis. *See Clevinger*, 134 F.4th at 1235 (finding no "irreparable injury" where "loss of customers" would not put appellant "out of business"); *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) (holding that "speculative" compliance costs were "too insubstantial to constitute threatened irreparable harm").

Besides, appellants have not substantiated their claims. *See Wisconsin Gas*, 758 F.2d at 674 ("Bare allegations of what is likely to occur are of no value[.]"). They say that "their harms" are "detailed" in "their pleadings and declarations." Mot. 4. But pleadings are not evidence, and appellants' declarations are riddled with vague, conclusory speculation (often based on hearsay) about potential costs that depend on a chain of contingencies and variable downstream effects. *See, e.g.*, Mot. Ex. 2, Amador Decl. ¶¶ 7-8 (Dkt. 1-2) (noting he was "informed" the Act requires "expensive electric retrofits" if "substantial modifications" are made, and that access

to "gas services" is "important to" his members).[2]  Worse yet, some of appellants' claims (e.g., "shrunken pool of gas customers," Mot. 6) are refuted by their own regulatory filings, which anticipate that "demand" and "customer counts" for gas services "will remain flat" "over the next 15 years," "consistent with recent history," even "assuming existing rules and regulations remain in place, including the Clean Energy DC Building Code Amendment Act of 2022."  Wash. Gas Light Co.'s 15-Year Plan Submission, *In re Implementation of Electric and Natural Gas Climate Change Proposals*, No. 1167 (D.C. Pub. Serv. Comm'n June 10, 2025) (Dkt. 45-1, at 2, 3, 19-20, 40).  Appellants have accordingly not shown irreparable injury, even accepting their underlying theory, *cf.* 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948.1 & nn.33-34 (3d ed. April 2026).

In arguing otherwise, appellants paint a distorted picture of the regulatory landscape.  To hear them tell it, the Clean Buildings Act will "[b]an" all "gas appliances, systems, and infrastructure" at the stroke of midnight on January 1, 2027, thereby "unleash[ing]" an "incalculable" array of "virulent" "compliance costs" and "burdensome constraints" on every restaurant, landlord, builder, and union worker

---

[2]  Upano Decl. ¶¶ 6-7 (Dkt. 1-3) (same); Graf Decl. ¶¶ 6-7 (Dkt. 1-4) (same); McGuire Decl. ¶ 5 (Dkt. 1-1) (speculating that appliance manufacturer "will face significant sales losses"); Jenkins Decl. ¶ 6 (Dkt. 1-5) (speculating that gas "customer base" may "erode" "over time" or "grow less than it would otherwise"); Boyer Decl. ¶ 6 (Dkt.1-6) (speculating that union work may be "reduce[d]"); Reed Decl. ¶ 6 (Dkt. 1-7) (speculating that "work performed by" unions may "decline").

in the District. *See* Mot. 2, 4-7. But that is just not so. Only those persons and businesses seeking permits for specific types of qualifying building projects after December 31, 2026, must comply with the Act's prohibition on the combustion of fossil fuels. *See supra* pp. 2-3. And appellants' motion professes no intention of applying for such a permit, and it identifies no qualifying building project of their own that the Act has rendered cost-prohibitive. *See* Mot. 2-7. At the same time, appellants ignore the Act's offsetting benefits, which include "significant savings on energy bills" for "owners and tenants" alike. Comm. Rep. at 6.

Appellants' own delays further undercut their motion. They waited two years after the Act's enactment to file suit, never sought a preliminary injunction, and did not move for expedited review in this Court until a full month after the district court's decision. *See Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) (denying motion to expedite where "six weeks" elapsed "between the appealed-from order and the motion to expedite"); 6 Cir. R. 32.1(a). Appellants' general lack of urgency throughout this case makes it difficult to believe that time is of the essence now. *See Fouts v. Warren City Council*, No. 23-1826, 2023 WL 6467366, at *2 (6th Cir. Oct. 4, 2023) (denying motion to expedite partly because appellant "failed to show that he acted expeditiously in filing his federal lawsuit").

**II. Appellants have not shown that the district court's decision is subject to substantial challenge.**

The district court's decision is also legally sound and not subject to substantial challenge. Appellants' sole theory is that there is "a split among federal courts on the scope of EPCA preemption," and that the district court in this case "departed" from the Ninth Circuit's decision in *CRA*, from which they draw their "broader view of EPCA preemption." Mot. 5, 7-8 (internal quotation marks omitted).

But that is not the full story. Appellants neglect to mention that *eleven* Ninth Circuit judges, speaking through Judge Friedland, disagreed with the *CRA* decision and "urge[d] any future court that interprets [EPCA] not to repeat the panel opinion's mistakes." 89 F.4th at 1119-20 (Friedland, J., dissenting from denial of rehearing en banc). For good reason. *CRA* "entirely misinterpret[ed]" EPCA's "narrow preemption provision," which merely "guarantees uniform appliance efficiency standards" and does not preempt every local building code that "prevents some consumers from using a natural gas appliance." *Id.* at 1121, 1125-26. The *CRA* panel opinion concluded otherwise only by essentially rewriting EPCA's statutory definitions and by ignoring the technical meaning of other terms, *see id.*—errors this Court would be loath to duplicate, *see, e.g.*, *District of Columbia v. Dep't of Lab.*, 819 F.3d 444, 449 (D.C. Cir. 2016) (Kavanaugh, J.) (emphasizing that "Courts are not at liberty to rewrite laws" or "erase" language "from the statute").

10

Appellants likewise neglect to mention that the "split" among lower courts on this issue is exceptionally lopsided—against them. Mot. Ex. 1 at 8 n.18. To date, every court to address the matter has rejected the *CRA* panel opinion in favor of Judge Friedland's dissent. *See, e.g.*, *Nat'l Ass'n of Home Builders of U.S. v. Montgomery Cnty.*, No. 24-CV-03024, 2026 WL 817322, at *7 (D. Md. Mar. 25, 2026), *appeal pending*, No. 26-1449 (4th Cir.); *Ass'n of Contracting Plumbers of City of N.Y., Inc. v. City of New York*, No. 23-CV-11292, 2025 WL 843619, at *5 (S.D.N.Y. Mar. 18, 2025), *appeal pending*, No. 25-977 (2d Cir.). As one court put it, critical aspects of *CRA* were "simply not a logical interpretation of the EPCA." *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 325-28 (N.D.N.Y. 2025), *appeal pending*, No. 25-2041 (2d Cir.). That the district court joined this growing chorus hardly exposes its decision to substantial challenge. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1201 (D.C. Cir. 2005) (holding that this Court will "not twist [statutory] language" to "avoid creating circuit splits").

## CONCLUSION

This Court should deny appellants' motion to expedite.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

CARL J. SCHIFFERLE
Deputy Solicitor General

/s/ Bryan J. Leitch
BRYAN J. LEITCH
Assistant Attorney General
Bar Number 1016484
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6524 (office)
(202) 741-0649 (fax)
bryan.leitch@dc.gov

May 2026

12

## CERTIFICATE OF COMPLIANCE

I certify that this opposition complies with the type-volume limitation in Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(a)(7)(B) because the opposition contains 2,506 words, excluding exempted parts. This opposition complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Bryan J. Leitch
BRYAN J. LEITCH