# United States Court of Appeals
# for the District of Columbia Circuit

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, et al.,

*Plaintiffs-Appellants,*

v.

DISTRICT OF COLUMBIA,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia (No. 24-cv-02942-ACR)

**BRIEF FOR NEW YORK, COLORADO, CONNECTICUT, HAWAI'I, ILLINOIS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, OREGON, VERMONT, THE COUNTY OF MONTGOMERY, MARYLAND, AND THE CITY OF NEW YORK AS AMICI CURIAE IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

BARBARA D. UNDERWOOD
 *Solicitor General*
JEFFREY W. LANG
 *Deputy Solicitor General*
DUSTIN J. BROCKNER
 *Assistant Solicitor General*
 *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
 The Capitol
 Albany, New York 12224
 (518) 776-2017

 Dated: July 24, 2026

(*Additional counsel on signature pages.*)

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this Court's Rule 28(a)(1), the undersigned counsel of record certifies as follows:

**A. Parties and Amici.** Except for amici curiae New York, Colorado, Connecticut, Hawai'i, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Vermont, the County of Montgomery, Maryland, and the City of New York, all parties, intervenors, and amici curiae that have appeared in this action are listed in the Brief for Appellee the District of Columbia.

**B. Rulings Under Review.** References to the ruling under review appear in the Brief for Appellee the District of Columbia.

**C. Related Cases.** References to related cases appear in the Brief for Appellee the District of Columbia.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................iii

GLOSSARY ........................................................................................viii

INTRODUCTION AND INTERESTS OF AMICI CURIAE ................... 1

BACKGROUND ................................................................................... 3

SUMMARY OF ARGUMENT ............................................................. 6

ARGUMENT

    EPCA DOES NOT PREEMPT THE DISTRICT'S CLEAN BUILDINGS ACT ....... 7

        A.   EPCA Has Long Been Understood to Preempt Only
            Laws that Target a Product's Energy Performance................. 7

        B.   Plaintiffs' Interpretation Is Wrong and Would Upset the
            Settled Understanding of EPCA Preemption......................... 11

            1.   The District's Law Does Not Regulate Based on Any
                Product's Energy Performance........................................ 11

            2.   The Waiver Provision Confirms that EPCA
                Preempts Only Laws Designed to Improve Energy
                Performance.................................................................... 19

        C.   Upsetting EPCA's Understanding Would Have Severe
            Consequences for States and Localities. ..............................22

            1.   Plaintiffs' Reading of EPCA Would Threaten to
                Preempt Longstanding Health and Safety Laws............22

            2.   Plaintiffs' Interpretation Lacks Clear, Administrable
                Rules that States and Localities Need. ..........................25

i

**Page**

CONCLUSION ...................................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES*

**Cases**                                                   **Page(s)**

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) .............................................................. 15

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*,
870 F.3d 1140 (9th Cir. 2017) ............................................ 16

*\*Ass'n of Contracting Plumbers of the City of New York, Inc. v.
City of New York*,
__ F.4th __, 2026 WL 1871692 (2d Cir. June 30,
2026) .................................................... 12-14, 19-20, 24, 27

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) .............................................................. 11

*California Restaurant Association v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ............................................ 10

*Cavel International, Inc. v. Madigan*,
500 F.3d 551 (7th Cir. 2007) .............................................. 16

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) .............................................................. 20

*Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*,
476 F.3d 326 (5th Cir. 2007) .............................................. 16

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) .............................................................. 26

*Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*,
No. 25 Civ. 113, 2026 WL 946235 (D. Md. Apr. 2, 2026) ................... 26

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ................................................................ 1

---

\* Authorities upon which we chiefly rely are marked with asterisks.

**Cases**                                                             **Page(s)**

*Nat. Res. Def. Council, Inc. v. Herrington,*
768 F.2d 1355 (D.C. Cir. 1985) ............................................... 8

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,*
514 U.S. 645 (1995) ............................................................... 22

*United States v. Miller,*
604 U.S. 518 (2025) ............................................................... 18

*Upside Foods Inc v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.,*
171 F.4th 1239 (11th Cir. 2026) ........................................... 16

*Virginia Uranium, Inc. v. Warren,*
587 U.S. 761 (2019) ............................................................... 15

*Wash. Gas Light Co. v. Prince George's Cnty. Council,*
711 F.3d 412 (4th Cir. 2013) ................................................. 24

*Wyeth v. Levine,*
555 U.S. 555 (2009) ............................................................... 11

**Laws**

*Federal*

Pub. L. No. 100-12, 101 Stat. 103 (1987) ................................. 8

12 U.S.C.
§ 25b(b)(1)(B) ...................................................................... 20

42 U.S.C.
§ 6201(5) ................................................................................ 3
§ 6291(4) ....................................................................... 4, 12-13
§ 6291(6) .............................................................................. 12
§ 6291(6)(A) ...................................................................... 3, 13
§§ 6291-6309 .......................................................................... 3
§ 6292(a)(9) .......................................................................... 23

**Laws** **Page(s)**

*Federal*

42 U.S.C. (cont'd)
§ 6292(a)(14)................................................................23
§ 6292(b)................................................................17
§ 6293(b)(3)................................................4, 12-13
§ 6295(a)..................................................................3
§ 6295(o)(4)..............................................................22
§ 6297(b)(1)..............................................................13
§ 6297(c) ....................................4-5, 9, 18, 21
§ 6297(c)(1)..............................................................13
§ 6297(d)(3)..............................................................19
§ 6297(d)(3)(D)..........................................................21
§ 6297(d)(4) ................................................19, 21
§ 6297(g)..................................................................4
§ 6297(*l*)..............................................................13
§§ 6311-6317 ............................................................3
§ 6834(a)(3)(D)(i)(I) ....................................................18

*State*

Cal. Health & Safety Code
§ 19881(a)................................................................23

D.C. Code
§ 6-1453.01(a)(3)(B)......................................................5
§ 6-1453.01(b)(2) ........................................................5

Minn. Stat.
§ 116.92(7b) ............................................................23

N.Y. Exec. Law
§ 378(19)..................................................................1

N.Y. Real Prop. Law
§ 239-e ..................................................................23

**Laws**                                                                    **Page(s)**

*State*

R.I. Gen. Laws
§ 23-24.9-2 ............................................................................... 23
§ 23-24.9-6.1 ............................................................................ 23

*Local*

Montgomery County Code
§ 8-14D(b) ................................................................................ 20

N.Y.C. Admin. Code
§ 24-177.1 ............................................................................. 1, 20
§ 28-506.1 ............................................................................. 1, 20

**Federal Regulations**

10 C.F.R.
§ 430.2 ...................................................................................... 23
§ 430.32(h)(3)(iii)-(vi) ............................................................. 14
§ 430.32(n) ............................................................................... 23
§ 430.32(dd) ............................................................................. 23

**Miscellaneous Authorities**

47 Fed. Reg. 14,424 (Apr. 2, 1982) ........................................ 7-8

47 Fed. Reg. 57,198 (Dec. 22, 1982) ......................................... 7

71 Fed. Reg. 12,634 (Mar. 13, 2006) ......................................... 9

75 Fed. Reg. 59,470 (Sept. 27, 2010) ........................................ 9

89 Fed. Reg. 28,856 (Apr. 19, 2024) ......................................... 9

Brief for the United States as Amicus Curiae in Support of
Petition for Rehearing, *Cal. Rest. Ass'n v. City of Berkeley*,
No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 ........................ 9-10

**Miscellaneous Authorities** **Page(s)**

Brief for the United States in Support of Appellee, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33 ........................................................................... 9

FDNY Foundation, *Don't Use Kerosene or Propane Space Heaters*, *available at* https://www.fdnysmart.org/safetytips/ dont-use-kerosene-propane-space-heaters/ ........................................ 23

H.R. Rep. No. 100-11 (1987) .............................................................. 8, 15

N.Y. Assembly Introducer's Mem. in Support, *in* Bill Jacket for ch. 647 (2019) .................................................................................. 23

New York State Department of Health, *Supplemental Space Heaters*, *available at* https://www.health.ny.gov/ environmental/indoors/air/heaters/ .................................................. 23

Purchase College, State University of New York, *Living on Campus: What to Bring & What Not to Bring*, *available at* https://www.purchase.edu/offices/living-on-campus/building- and-room-information/packing-guide/ ............................................... 24

S. Rep. No. 100-6 (1987) ..................................................................... 8, 15

United States' Statement of Interest, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30 ................................................................... 9-10

# GLOSSARY

| | |
|---|---|
| EPCA | Energy Policy and Conservation Act |
| DOE | U.S. Department of Energy |
| JA | Joint Appendix |
| kBtu | Thousand British thermal units |

**INTRODUCTION AND INTERESTS OF AMICI CURIAE**

The States of New York, Colorado, Connecticut, Hawaiʻi, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, and Vermont as well as the County of Montgomery, Maryland, and the City of New York (collectively, "Amici") submit this brief in support of defendant-appellee the District of Columbia (the "District") and affirmance.[1]

Our federal system, by design, grants states and localities broad latitude to protect the health and safety of their residents. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996). Exercising these traditional police powers, Amici have adopted legislation to restrict unsafe products, reduce pollution, and promote renewable energy, including laws that restrict the use of fossil-fuel-powered appliances in certain buildings.[2] In enacting

---

[1] To the extent necessary given the County and the City Amici's participation, the undersigned counsel certifies on these Amici's behalf that this separate brief is necessary because plaintiffs-appellants' preemption claim implicates Amici's authority to exercise their police powers to safeguard their constituents as detailed below. Counsel for all parties have consented to this brief's filing. No party's counsel authored this brief in whole or in part, and no person other than Amici or their counsel made a monetary contribution to its preparation or submission.

[2] *See, e.g.*, N.Y. Exec. Law § 378(19); N.Y.C. Admin. Code §§ 24-177.1, 28-506.1.

these measures, Amici have sought to limit hazardous emissions that endanger human and environmental health.

Plaintiffs' preemption claim seeks to improperly thwart Amici's power to safeguard their residents. Plaintiffs allege that the federal Energy Policy and Conservation Act ("EPCA") preempts the District's Clean Buildings Act, which, once implemented, will prohibit fossil-fuel-powered appliances in certain new and substantially improved buildings. EPCA, however, creates a regime of performance standards for certain consumer and industrial appliances—meaning standards addressed to manufacturers that limit the quantity of energy those appliances are designed to consume when operated, as determined under testing conditions. Through a targeted preemption provision, EPCA prevents states and localities from imposing their own competing performance standards, whether in form or function. The District's law, however, sets no such standards. Rather, to protect indoor air quality and the outdoor climate, the law regulates the *source* of energy in covered buildings. The district court thus correctly held the District's law is not preempted.

To claim otherwise, plaintiffs stretch EPCA well beyond its text and purpose. Plaintiffs contend that EPCA's appliance-efficiency program

grants them the right to install and operate gas appliances in any building of their choosing nationwide. This claim contradicts EPCA's clear terms and, if adopted, would upend settled expectations—with potentially severe consequences for states and localities. This Court should reject plaintiffs' claim and affirm.

## BACKGROUND

As Congress has made clear, EPCA is intended to "provide for improved energy efficiency" of certain appliances. 42 U.S.C. § 6201(5). The statute establishes, or authorizes DOE to establish, "energy conservation standards" for products covered by EPCA. *Id.* § 6295(a).[3] An "energy conservation standard" includes a "performance standard" that prescribes "a minimum level of energy efficiency or a maximum quantity of energy use" for "a covered product, determined in accordance with test procedures prescribed under section 6293." *Id.* § 6291(6)(A). The phrase "energy use"—a core component of a performance standard—is defined

---

[3] EPCA addresses consumer and industrial products in different provisions. 42 U.S.C. §§ 6291-6309 (consumer); *id.* §§ 6311-6317 (industrial). The provisions are substantially similar and, for convenience, this brief, like the district court's decision, will cite the provisions that govern consumer products.

as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293." *Id.* § 6291(4). And § 6293's test procedures measure the "energy use" of "a covered product during a representative average use cycle or period of use." *Id.* § 6293(b)(3).

The phrase "energy use" thus refers to the measure of how much energy an appliance typically consumes when operated under controlled testing conditions. This measure is fixed after testing. A product's "energy use," by definition, does not vary depending on how or even if the appliance is actually used by any consumer. *See id.* § 6297(g) (recognizing distinction between "energy use" and energy consumption "under conditions of actual use").

EPCA contains an express preemption provision entitled "[g]eneral rule of preemption for energy conservation standards when Federal standard becomes effective for product." *Id.* § 6297(c). The provision states, in relevant part, that "effective on the effective date of an energy conservation standard established in or prescribed under [§ 6295] for any covered product, *no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective* with respect to such

4

product unless the regulation" falls into one of certain exceptions. *Id.* (emphasis added).

EPCA's regime embodies a fundamental symmetry: The law imposes standards that (1) aim to improve a product's energy performance while (2) displacing state and local laws that call for products to meet a different performance-based target. The statute, however, does not sweep broader to displace *any* state and local law that may affect where or whether a covered product may be installed or used once in the hands of consumers.

Consequently, the district court in this case held that the District's Clean Buildings Act is not preempted. (Joint Appendix ("JA") 377-378.) That law, once implemented, will generally prohibit the on-site combustion of fossil fuels for "the provision of thermal energy" to certain buildings. D.C. Code § 6-1453.01(a)(3)(B), (b)(2). The district court explained that the phrase "energy use" under EPCA refers to the "fixed measure of an appliance's performance capacity," not "whether the appliance can be used in a particular context." (JA 385.) Thus, as the court concluded, the District's law is not preempted because it regulates the *source* of energy regardless of any product's "energy use." (JA 385-396.)

## SUMMARY OF ARGUMENT

Plaintiffs' preemption claim fails as a matter of law. Consistent with DOE's repeated guidance, EPCA has long been understood to preempt only state and local laws that regulate the energy performance of EPCA-covered products. Plaintiffs' flawed reading of EPCA would disrupt this understanding and transform EPCA from a shield protecting product manufacturers from conflicting state performance standards into a sword for anyone to invalidate potentially any law affecting a product's usage anywhere in the country. Until recently, EPCA had not been misconstrued this way. Although the United States now—for the first time in EPCA's half-century existence—supports plaintiffs' reading of the statute, that reading contravenes EPCA's text, structure, and history.

Plaintiffs' theory, taken to its limit, could also have severe consequences for states and localities. Their theory could call into question measures ranging from a public college's ban on microwaves in dorm rooms to a municipality's residential zoning restriction on industrial appliances. Plaintiffs' interpretation also fails to provide a clear standard for understanding what is not preempted, thus impairing the ability of

states and localities to respond to their constituencies' needs in the way our federal system envisions.

## ARGUMENT

### EPCA DOES NOT PREEMPT THE DISTRICT'S CLEAN BUILDINGS ACT

**A.  EPCA Has Long Been Understood to Preempt Only Laws that Target a Product's Energy Performance.**

For decades, EPCA's implementing agency, DOE, has interpreted the statute to preempt only a limited subset of state energy regulations. In 1982, DOE explained that EPCA displaces state regulations that "established the energy efficiency of a particular appliance." 47 Fed. Reg. 14,424, 14,456 (Apr. 2, 1982). The statute would preempt, for instance, "[p]rohibition of hook-ups for appliances with less than a certain efficiency," i.e., less than a specific "energy use" figure. 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982). By contrast, a prohibition on installing a specified product in new buildings would *not* be preempted. *See id.* ("Prohibition against placing oversized furnaces and air conditioners in new buildings, would not be subject to preemption."). The difference between the two is that the latter is not aimed at improving any product's energy performance.

Indeed, as DOE elaborated, a regulation "whose purpose is other than energy efficiency such as a law on fire safety, would not appear to be preempted by the Federal rule, even if it has a secondary and incidental effect of improving the efficiency of a covered product." 47 Fed. Reg. at 14,456. Consistent with this understanding, this Court described EPCA as preempting "state-law efficiency requirements." *Nat. Res. Def. Council, Inc. v. Herrington,* 768 F.2d 1355, 1363, 1368 (D.C. Cir. 1985).

Congress acquiesced in this view of preemption when, in 1987, it enacted the National Appliance Energy Conservation Act. *See* Pub. L. No. 100-12, 101 Stat. 103 (1987). Although the amendments imposed new limits on DOE's authority to grant preemption waivers for state efficiency standards, S. Rep. No. 100-6, at 9 (1987), they did not suggest any disagreement with DOE's understanding about what laws would be preempted in the first place. On the contrary, Congress designed the 1987 amendments to "follow[ ] substantially the preemption requirements in current EPCA" by "continu[ing] the basic concept of preempting State energy efficiency standards." H.R. Rep. No. 100-11, at 23-24 (1987); S. Rep. No. 100-6, at 9 (noting that the preemption provision "preempts State regulation, as provided under current law").

The preemption provision's title added by Congress reinforced this objective: It specifies that the provision sets forth a "[g]eneral rule of preemption for *energy conservation standards* when Federal standard becomes effective for product." 42 U.S.C. § 6297(c) (emphasis added).

DOE's actions over the ensuing decades confirm this understanding. The agency continued to interpret the phrase "'regulation concerning energy use' to be equivalent to 'energy conservation standard,'" which entails laws that impose "a performance-based standard." 75 Fed. Reg. 59,470, 59,530 (Sept. 27, 2010); *see, e.g.*, 89 Fed. Reg. 28,856, 28,865 (Apr. 19, 2024); 71 Fed. Reg. 12,634, 12,635 (Mar. 13, 2006). The United States reaffirmed its position on EPCA's limited preemptive scope in recognizing that the statute does not preempt building electrification laws that, like the District's law at issue here, forbid gas-powered appliances in certain new buildings.[4] Such laws, the United States explained, neither

---

[4] Brief for the United States as Amicus Curiae in Support of Petition for Rehearing, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 ("*Berkeley* Rehearing Br."); Brief for the United States in Support of Appellee, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33; United States' Statement of Interest, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30 ("U.S. *Montgomery* Br."), withdrawn, ECF No. 39 (Mar. 19, 2025).

concern any covered product's energy performance nor interfere with EPCA's program.[5]

Granted, after the most recent change in presidential administrations, the United States claimed—for the first time—that the statute confers on consumers a federal right to install and use covered products in their preferred locations. (*See generally* U.S. Br.) To attempt to justify this about-face, the United States asserts that it now finds "persuasive" the panel opinion in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), the sole decision to adopt plaintiffs' sweeping view of EPCA's appliance-efficiency regime. (U.S. Br. at 2 n.1.) But the current view of the United States carries little to no weight in view of the fact that the United States previously held the *opposite* view of the *Berkeley* panel opinion. In *Berkeley* itself, the United States supported a petition for rehearing en banc, explaining at length why the panel opinion misconstrued EPCA; subsequently, the United States urged another federal court not to follow *Berkeley*'s "erroneous decision."[6]

---

[5] *See, e.g.*, *Berkeley* Rehearing Br., *supra* n.4, at 1-2, 6-16, 18-22.

[6] *See Berkeley* Rehearing Br., *supra* n.4, at 1-2, 11-22; U.S. *Montgomery* Br., *supra* n.4, at 11-15 (noting that the *Berkeley* decision is based on multiple "interpretive flaws").

A decision that the United States previously described as "erroneous" cannot justify its abandonment of its longstanding position. *Cf. Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (noting that United States' changed interpretation of a preemption provision is "particularly dubious given that just five years ago the United States advocated the interpretation that we adopt today"); *Wyeth v. Levine*, 555 U.S. 555, 580 n.13 (2009).

Even setting this aside, the United States' newfound reading of EPCA is unsound for all the reasons discussed below.

## B. Plaintiffs' Interpretation Is Wrong and Would Upset the Settled Understanding of EPCA Preemption.

Plaintiffs' preemption theory, now echoed by the United States, rests on a fundamental misreading of EPCA.

### 1. The District's Law Does Not Regulate Based on Any Product's Energy Performance.

Plaintiffs and the United States contend that the District's law is preempted because, by prohibiting gas appliances in certain buildings, it sets "the maximum 'energy use' of EPCA-covered gas appliances at zero." (Pl. Br. at 12; *see* U.S. Br. at 16.) That theory, however, ignores EPCA's

11

definition of "energy use." The phrase "energy use" is a core component of a performance standard, 42 U.S.C. § 6291(6), and defined to mean the fixed, representative measure of energy consumption determined through premarket test procedures, *id.* §§ 6293(b)(3), 6291(4).

So, as the Second Circuit recently explained in rejecting an identical EPCA preemption challenge, "nothing a consumer does with the appliance changes that appliance's 'energy use.'" *Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York* ("*Contracting Plumbers*"), __ F.4th __, 2026 WL 1871692, at *4 (2d Cir. June 30, 2026). The fact that a consumer may never use an appliance does not mean that the appliance's "energy use" is zero. Plaintiffs' contrary theory—misconstruing "energy use" to mean "actual use"—would improperly displace *any* state law affecting whether or how covered appliances can be used. Neither EPCA's text nor its structure supports that anomalous position. *See id.* at *4-6.

Equally baseless is the assertion by plaintiffs and the United States that the District's law is preempted because it is a "stringent" energy performance standard that limits a product's energy use to "zero." (Pl. Br. at 14, 38-39; U.S. Br. at 16-17.) There is no such thing as "zero energy

use" under EPCA. "Energy use" must be determined "during a representative average *use* cycle or period of *use*," so the product must be operated under testing conditions to ascertain the "quantity of energy directly consumed." 42 U.S.C. §§ 6293(b)(3), 6291(4) (emphases added). No product can operate for a cycle or period on zero energy—a fact that neither plaintiffs nor the United States dispute.

For this reason, the District's law does not function as a performance standard. *See Contracting Plumbers*, 2026 WL 1871692, at *8-10. A performance standard under EPCA provides that an appliance may be sold *if* it is designed to consume no more than a specified "maximum quantity" of energy when operated, such as 100 or 0.01 kBtu per year.[7] 42 U.S.C. § 6291(6)(A). That is *not* how the District's law works. The law does not, for instance, provide that a gas appliance may be sold or installed *if* it is designed to consume "zero energy" when operated. On the contrary, if a product burns fossil fuels, then no change in the measure

---

[7] The "energy use" under EPCA is expressed as a numerical unit, such as kilowatts per hour or the equivalent in British thermal units. *See* 42 U.S.C. § 6297(b)(1), (c)(1), (*l*). A "kBtu" refers to a thousand, or kilo, British thermal units.

of its energy consumption would make that product operable in covered buildings under the District's law.

Nor does the District's law operate indirectly as a performance standard by proxy. This is because "there is no equivalency between the type of energy an appliance uses and that appliance's 'energy use.'" *Contracting Plumbers*, 2026 WL 1871692, at \*9 (quotation marks omitted). The District's law, like other building electrification measures, does not aim to improve any product's energy performance. Rather, the law serves environmental and health goals by forbidding the use of appliances that burn fossil fuel and thereby produce hazardous emissions. Unsurprisingly, then, the District's limit on fossil-fuel-powered appliances does not have practically the same effect as a regulation that calls for appliances that consume less energy when operated. *See id.* Indeed, it is undisputed that fossil fuel appliances may sometimes be more energy efficient, or consume less total energy, than their electric counterparts. *See, e.g.*, 10 C.F.R. § 430.32(h)(3)(iii)-(vi) (setting more stringent performance standard for gas clothes dryers than for electric dryers). Thus, unlike the regulations that EPCA preempts, nothing in the District's law requires any specific energy performance level from any appliance.

Plaintiffs and the United States also misconstrue EPCA's goal of "regulatory uniformity." (Pl. Br. at 13; *see* U.S. Br. at 30.) Congress amended EPCA's preemption framework in 1987 in response to a specific type of "patchwork": the patchwork of "State energy efficiency standards" that had resulted from DOE's then-extant policy of freely granting states preemption waivers. H.R. Rep. No. 100-11, at 24; S. Rep. No. 100-6, at 4. Any other patchwork, such as diverse health and safety regulations across the states, is simply an inherent feature of our federalist system. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (reaffirming that states may differ in their policy choices).

EPCA's regulation of just *one* aspect of covered products—their energy performance—does not evince a broader congressional intent to prevent states and localities from regulating access to or use of those products. Federal regulation of certain activities does not necessarily preempt state bans of related activities that are upstream or downstream from those federally regulated. For instance, "federal regulation of nuclear powerplants does not demand that States allow the construction of such powerplants in the first place." *Virginia Uranium, Inc. v. Warren*,

587 U.S. 761, 790-91 & n.4, 793 (2019) (Ginsburg, J., concurring in the judgment).

Numerous courts have held that a federal law that provides uniform manufacturing standards for a product, and preempts conflicting state requirements, does not prohibit states from banning that product entirely. For instance, the Fifth and Seventh Circuits have held that a federal law that sets standards for meat processing does not expressly preempt a state law banning the sale of horsemeat. *See Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 333-34 (5th Cir. 2007); *Cavel International, Inc. v. Madigan*, 500 F.3d 551, 553-54 (7th Cir. 2007). The Eleventh and Ninth Circuits have similarly held that a federal law that sets poultry processing standards does not expressly preempt state laws that ban, respectively, lab-grown chicken or foie gras. *Upside Foods Inc v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 171 F.4th 1239, 1243 (11th Cir. 2026); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1149-51 (9th Cir. 2017). As the Ninth Circuit explained, nothing in the federal law "limits a state's ability to regulate the *types* of poultry that may be sold for human consumption." *Ass'n des Éleveurs de Canards*, 870 F.3d at 1150. Likewise

16

here, nothing in EPCA's regime of appliance standards limits a state's ability to regulate the *types* of energy that may be available in new buildings.

To read EPCA's preemption provision more broadly would create a serious mismatch between DOE's regulatory authority and the preemption provision. On plaintiffs' view, once DOE classifies an appliance as a "covered product," 42 U.S.C. § 6292(b), and sets a standard for that product, then the states are preempted from enacting laws that affect a product's "use" of "energy" in any way. But nothing in EPCA's text or structure suggests that DOE's narrow authority to regulate a covered product's energy performance prevents the states from restricting the sale or use of that product altogether. Congress did not, by regulating the energy performance of certain products, create an unrestricted federal right to install those products when and where the consumer chooses.

Indeed, although the United States asserts that building electrification laws are contrary to its current goals of reducing costs and increasing choice for consumers (U.S. Br. at 30), its brief overlooks the federal statute that requires a phase-out of fossil fuels in federal buildings such that, after 2030, covered federal buildings that are new or undergoing major

17

renovations must have no "fossil fuel-generated energy consumption." 42 U.S.C. § 6834(a)(3)(D)(i)(I). The current administration's preferences fail to establish a general federal policy against fossil fuel restrictions given that federal law favors such restrictions in federal buildings.

Plaintiffs' claim finds no support in the term "concerning" in the preemption provision—i.e., that no "State regulation concerning the energy efficiency, energy use, or water use" of a covered product is effective with respect to such product unless an exception applies. 42 U.S.C. § 6297(c). As with other connecting phrases such as "with respect to," the breadth of the term "concerning" is determined by its surrounding context. *United States v. Miller*, 604 U.S. 518, 532-34 (2025) (using context to reject broad reading of the phrase "with respect to"). That context shows that EPCA is designed to set standards to improve products' energy performance and displace state laws that pressure manufacturers to design appliances to meet more demanding performance-based targets. *See supra* at 11-15. The District's law, by contrast, is unconcerned with a product's "energy use" because the quantity of energy inherent in the product's design is irrelevant to the law's operation. Indeed, in enforcing

the District's law, regulators can "remain blind to an appliance's 'energy use.'" *Contracting Plumbers*, 2026 WL 1871692, at *9.

### 2. The Waiver Provision Confirms that EPCA Preempts Only Laws Designed to Improve Energy Performance.

There is no merit to plaintiffs' and the United States' reliance on EPCA's waiver provision, which allows DOE to waive preemption for state regulations if certain statutory conditions are met. (*See* Pl. Br. at 28-29; U.S. Br. at 21-23.) Plaintiffs and the United States note that DOE cannot grant a waiver if the agency finds that an interested party opposed to a waiver request has made one of two showings: The state regulation either (1) "is likely to result in the unavailability in the State" of a covered product type or (2) "will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." 42 U.S.C. § 6297(d)(3), (4). As the United States puts it (U.S. Br. at 21), the District's law would be ineligible for a waiver preemption under either criterion, thereby "demonstrating Congress's intent" that the law should be preempted.

This argument fails for multiple reasons. As a threshold matter, the argument is unsupported as a factual matter. Building electrification

laws have already been implemented or enacted across the country. *See, e.g.*, N.Y.C. Admin. Code §§ 24-177.1, 28-506.1; Montgomery County Code § 8-14D(b). Yet neither the United States, nor plaintiffs, cite any evidence that such laws—which often come with exceptions—or the District's law in particular would render fossil fuel appliances unavailable in any jurisdiction. Nor do they cite any evidence that such laws will significantly burden manufacturers or others in the supply chain nationwide.

Regardless, the waiver provision cannot bear the weight placed on it by plaintiffs and the United States. Because that provision is an *exception* to preemption, it does not define what laws would be subject to preemption in the first instance. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013) (preemption exceptions "identify matters a State may regulate when it would otherwise be precluded from doing so, but they do not control more than that"); *Contracting Plumbers*, 2026 WL 1871692, at *8. If Congress intended to preempt laws based on whether the law impairs a product's availability or use, the preemption provision would have said so directly. *See, e.g.*, 12 U.S.C. § 25b(b)(1)(B) (preempting, in the national bank context, any state law that "prevents or significantly interferes with the exercise by the national bank of its powers").

EPCA's general rule of preemption, however, contains no such language. And, contrary to the United States' argument (U.S. Br. at 21-22), nothing in the statutory text suggests that, in assessing whether a state or local law is subject to preemption, courts should engage in a fact-laden, predictive assessment of that law's potential effects on a product's supply chain. *See* 42 U.S.C. § 6297(c).

The two limits on DOE's waiver authority cited by plaintiffs and the United States serve a narrow purpose. They evidence a congressional intent to prevent DOE from granting waivers to certain state and local laws that seek to improve a product's energy performance and thereby conflict with federal standards. That is why, in assessing whether to grant a waiver, DOE considers the degree to which the state law is likely to lead to a proliferation of other "State appliance *efficiency* requirements." *Id.* § 6297(d)(3)(D) (emphasis added).

This conclusion is bolstered by the provision that bars waiver for a state regulation that DOE finds is likely to result in a product's in-state "unavailability." *Id.* § 6297(d)(4). EPCA imposes a similar limit on DOE's authority to set federal energy conservation standards. DOE may not prescribe a standard that is "likely to result in the unavailability" of that

product in the United States. *Id.* § 6295(o)(4). By imposing similar restrictions on DOE's ability to set standards and grant waivers, Congress made clear that it wanted to prevent energy performance standards—whether federal *or* state—that could significantly affect a product's unavailability. But these limits on DOE—a federal agency—fail to evince a broader intent to bar states from exercising their police powers to regulate appliances for reasons unrelated to any product's energy performance capabilities. *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (courts have not "assumed lightly that Congress has derogated state regulation").

## C. Upsetting EPCA's Understanding Would Have Severe Consequences for States and Localities.

### 1. Plaintiffs' Reading of EPCA Would Threaten to Preempt Longstanding Health and Safety Laws.

Adopting plaintiffs' broad view of EPCA preemption could invite litigation against any state or local law that affects where or whether covered products can be operated on the misguided theory that such a law sets the product's "maximum quantity of 'energy use' at zero." (Pl. Br. at 14.) This includes longstanding laws to ensure consumer safety. For

instance, because EPCA covers home heating equipment,[8] plaintiffs' theory could call into question longstanding state laws banning fossil-fuel-burning space heaters,[9] which pose a deadly risk of fire and carbon-monoxide poisoning.[10] Likewise, because EPCA covers various types of lightbulbs,[11] plaintiffs' theory could also call into question state laws that prohibit lightbulbs containing mercury,[12] even though these laws are designed to reduce pollution and protect human health.[13]

---

[8] *See* 42 U.S.C. § 6292(a)(9) (listing "[d]irect heating equipment" as a covered product); 10 C.F.R. § 430.2 (defining "[d]irect heating equipment" as "vented home heating equipment and unvented home heating equipment").

[9] *E.g.*, Cal. Health & Safety Code § 19881(a) (unvented natural gas heaters); N.Y. Real Prop. Law § 239-e (kerosene heaters).

[10] New York State Department of Health, *Supplemental Space Heaters*; FDNY Foundation, *Don't Use Kerosene or Propane Space Heaters*. (For sources available online, URLs are in the Table of Authorities. All websites last visited July 24, 2026.)

[11] *See* 42 U.S.C. § 6292(a)(14) (listing "[g]eneral service fluorescent lamps" and "general service incandescent lamps" as covered products); 10 C.F.R. § 430.32(n), (dd) (setting energy conservation standards for various lamps).

[12] *E.g.*, R.I. Gen. Laws §§ 23-24.9-2, 23-24.9-6.1; Minn. Stat. § 116.92(7b).

[13] N.Y. Assembly Introducer's Mem. in Support, *in* Bill Jacket for ch. 647 (2019), at 8 (noting that bill limiting mercury in certain lightbulbs is intended to "minimize the potential health risks" posed by mercury).

Plaintiffs' position could also affect other state laws that regulate the use of covered products in certain buildings. Noise ordinances that prohibit the use of industrial fans could "fall by the wayside." *Contracting Plumbers*, 2026 WL 1871692, at \*13. Similarly, public universities often ban in student housing a laundry list of items that qualify as covered products under EPCA.[14] Yet plaintiffs' preemption theory leads to the untenable conclusion that public universities set a "performance standard of zero energy use" when they tell students not to bring their own microwaves or air conditioners—as well as the equally untenable conclusion that students have a federal right to install and use such appliances in their dorm rooms.

Plaintiffs' theory could similarly be used to challenge local zoning laws. Such laws can prohibit the use of industrial-grade appliances in residential areas or limit whether owners may install appliances for reasons unrelated to energy conservation. *See, e.g.*, *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421 (4th Cir. 2013) ("[T]he power to impose a zoning requirement includes the power to preclude any

---

[14] *See, e.g.*, Purchase College, State University of New York, *Living on Campus: What to Bring & What Not to Bring*.

proposed usage of the zoned area that cannot comply with such require-ment."). Plaintiffs' expansive theory, if accepted, would mean that EPCA's appliance-efficiency regime creates a de facto immunity from zoning requirements for covered products, even if the requirements are entirely neutral as to any product's energy performance capability.

### 2. Plaintiffs' Interpretation Lacks Clear, Administrable Rules that States and Localities Need.

Plaintiffs attempt to downplay the breadth of their theory, but they are mistaken. Plaintiffs, again echoed by the United States, suggest that EPCA would not preempt a "targeted provision" of state law "with only incidental or peripheral effects on gas appliances." (Pl. Br. at 37; *see* U.S. Br. at 31.) Plaintiffs and the United States fail to offer any text-based reason for this distinction. After all, EPCA preemption extends to "regu-lations concerning the energy use" of a covered product, rather than any "regulation concerning *the covered products*" themselves. Plaintiffs and the United States also fail to articulate any standards for determining what constitutes a sufficiently "incidental" effect on a covered appliance such that a law would not be preempted.

Plaintiffs' rudderless preemption theory could create significant

problems for states and localities, which need "workable standards" for preemption. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). If a preemption provision's scope is clear, then states and localities can craft policies consistent with federal law. When, however, a preemption provision's reach is unpredictable, as it is under plaintiffs' theory, policymakers are left to stumble in the dark while private parties are free to capitalize on a provision's indeterminacy to challenge state and local laws that they dislike.

Amici know firsthand the problems that attend plaintiffs' theory. For most of EPCA's history, there were few preemption lawsuits because it was widely understood that the statute preempted only a narrow slice of energy conservation-related laws. But that changed with the Ninth Circuit's outlier panel opinion in *Berkeley*. That decision prompted a wave of challenges in which proponents of gas appliances contend that EPCA establishes a broad federal right to install covered products free of state and local restrictions.[15]

---

[15] *See, e.g., Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain,* No. 25 Civ. 113, 2026 WL 946235 (D. Md. Apr. 2, 2026), *appeal pending*, No. 26-1552 (4th Cir.).

The Second Circuit, however, recently joined the "growing consensus" of courts to reject *Berkeley*. *Contracting Plumbers*, 2026 WL 1871692, at *13, n.15. This Court should join that consensus and reject plaintiffs' improper attempt to stretch EPCA beyond its text and traditional understanding.

## CONCLUSION

The Court should affirm the district court's judgment.

Dated: Albany, New York
July 24, 2026

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*

By: */s/ Dustin J. Brockner*

BARBARA D. UNDERWOOD          DUSTIN J. BROCKNER
  *Solicitor General*          Assistant Solicitor General
JEFFREY W. LANG
  *Deputy Solicitor General*   The Capitol
DUSTIN J. BROCKNER             Albany, New York 12224
  *Assistant Solicitor General*  (518) 776-2017
    *of Counsel*               dustin.brockner@ag.ny.gov

*(Counsel list continues on next pages.)*

27

PHILIP J. WEISER
  *Attorney General*
  *State of Colorado*
1300 Broadway, 10th Floor
Denver, Colorado 80203

WILLIAM TONG
  *Attorney General*
  *State of Connecticut*
165 Capitol Avenue
Hartford, Connecticut 06106

ANNE E. LOPEZ
  *Attorney General*
  *State of Hawaiʻi*
425 Queen Street
Honolulu, Hawaiʻi 96813

KWAME RAOUL
  *Attorney General*
  *State of Illinois*
115 S. LaSalle Street
Chicago, Illinois 60603

ANTHONY G. BROWN
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21201

ANDREA JOY CAMPBELL
  *Attorney General*
  *Commonwealth of Massachusetts*
1 Ashburton Place
Boston, Massachusetts 02108

DANA NESSEL
  *Attorney General*
  *State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

KEITH ELLISON
  *Attorney General*
  *State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, Minnesota 55155

JENNIFER DAVENPORT
  *Attorney General*
  *State of New Jersey*
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, New Mexico 87501

DAN RAYFIELD
  *Attorney General*
  *State of Oregon*
1162 Court Street NE
Salem, Oregon 97301

CHARITY R. CLARK
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, Vermont 05609

JOHN P. MARKOV
  *County Attorney*
  *Montgomery County, Maryland*
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850

STEVEN BANKS
  *Corporation Counsel*
  *City of New York*
100 Church Street
New York, New York 10007

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,219 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and corresponding local rules.

/s/ *Dustin J. Brockner*
Dustin J. Brockner

# CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed the foregoing Brief of Amici Curiae State of New York et al. with the Clerk of the Court for the United States Court of Appeals for D.C. Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ *Dustin J. Brockner*
Dustin J. Brockner