**ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 8, 2026**

**No. 26-7050**

# In the United States Court of Appeals for the District of Columbia Circuit

———————————————————————

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, *et al.*,
*Appellants*

v.

DISTRICT OF COLUMBIA,
*Appellee*

———————————————————————

On Appeal from the U.S. District Court for the District of Columbia
No. 1:24-CV-02942-ACR, District Judge Ana C. Reyes

———————————————————————

## REPLY BRIEF OF APPELLANTS
———————————————————————

| | |
|---|---|
| Scott Novak | J. Mark Little |
| BAKER BOTTS L.L.P. | BAKER BOTTS L.L.P. |
| 700 K Street NW | 910 Louisiana Street |
| Washington, D.C. 20001 | Houston, TX 77002 |
| (202) 639-1316 | (713) 229-1489 |
| scott.novak@bakerbotts.com | mark.little@bakerbotts.com |
| | |
| | Daniel B. Rankin |
| | BAKER BOTTS L.L.P. |
| | 401 S. 1st Street, Ste. 1300 |
| | Austin, TX 78704 |
| | (737) 393-7297 |
| | daniel.rankin@bakerbotts.com |

*Counsel for National Association of Home Builders of the United States,*
*Restaurant Law Center, National Apartment Association, Maryland Building*
*Industry Association, and Washington Gas Light Company*

*Additional counsel and parties listed on next page*

Abigail V. Carter
BREDHOFF & KAISER, P.L.L.C.
805 15th St. NW, Ste. 1000
Washington, D.C. 20005
(202) 842-2600
acarter@bredhoff.com

*Counsel for Philadelphia-Baltimore-Washington Laborers' District Council*

Lauren McDermott
MOONEY, GREEN, SAIDON, MURPHY & WELCH, P.C.
1920 L St. NW
Washington, D.C. 20036
(202) 783-0010
lmcdermott@mooneygreen.com

*Counsel for Teamsters Local 96*

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities ......................................................................................... iii

Glossary ......................................................................................................... vii

Summary of Argument ....................................................................................... 1

Argument ......................................................................................................... 2

I.   The Clean Buildings Act would be preempted even under an unreasonably narrow interpretation of EPCA's preemption provision ............ 2

    A.   Any conceivable reading of EPCA's preemption provision would cover a regulation that sets a 0 kBtu/year energy use standard. ........... 3

    B.   The Clean Buildings Act operates as a 0 kBtu/year energy use standard on gas appliances in covered buildings. ................................. 4

    C.   The District cannot explain why EPCA does not preempt the Clean Buildings Act's 0 kBtu/year energy use standard. ...................... 5

II.  The District's view of EPCA preemption cannot be squared with the text, structure, history, and purpose of the statute. ......................................... 8

    A.   The presumption against preemption does not apply. ......................... 8

    B.   "Concerning" is a broadening term. ....................................................... 9

    C.   The District misunderstands the interpretive importance of EPCA's exception, waiver, and other provisions. .............................. 10

    D.   The District misinterprets "energy use" and "point of use." ............... 13

    E.   The District's invocation of EPCA opinions from other courts does not cure the defects in its reasoning. .......................................... 14

III. *Amici*'s arguments cannot save the Clean Buildings Act. ............................ 14

IV.  There are no procedural or remedial barriers to relief ................................. 18

A.    EPCA facially preempts the Clean Buildings Act, but any disagreement on that point goes only to the breadth of the remedy. ...................................................................................................19

B.    Plaintiffs are entitled to declaratory and injunctive relief against the entirety of the Clean Buildings Act. ..............................................22

Certificate of Compliance ...................................................................................30

Certificate of Service ..........................................................................................31

# TABLE OF AUTHORITIES*

**Page(s)**

**CASES**

*Alaska Airlines, Inc. v. Brock*,
480 U.S. 678 (1987)............................................................................25

*Angelo v. District of Columbia*,
180 F.4th 324 (D.C. Cir. 2026).............................................................9

*\*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ......................................5, 7, 14, 18, 22

*Champion v. Ames*,
188 U.S. 321 (1903)...............................................................................5

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)..............................................................................22

*Crandon v. United States*,
494 U.S. 152 (1990)..............................................................................12

*Doe v. Blanche*,
172 F.4th 901 (D.C. Cir. 2026)............................................................14

*Dorchy v. Kansas*,
264 U.S. 286 (1924)..............................................................................25

*Espresso, Inc. v. District of Columbia*,
884 F. Supp. 7 (D.D.C. 1995)..............................................................24

*Greenbaum v. Islamic Republic of Iran*,
67 F.4th 428 (D.C. Cir. 2023)..............................................................13

*He Depu v. Yahoo! Inc.*,
950 F.3d 897 (D.C. Cir. 2020)..............................................................26

*Huerta v. Ducote*,
792 F.3d 144 (D.C. Cir. 2015)..............................................................15

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010).................................................................................20, 21

*Lamar, Archer & Cofrin, LLP v. Appling*,
  584 U.S. 709 (2018)......................................................................................10

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995)......................................................................................27

*Mont. Med. Ass'n v. Knudsen*,
  119 F.4th 618 (9th Cir. 2024) ......................................................................21

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024)......................................................................................19

*Mulhern Gas Co. v. Mosley*,
  798 F. Supp. 3d 304 (N.D.N.Y. 2025)..........................................................26

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)......................................................................................18

*Newman v. Moore*,
  151 F.4th 472 (D.C. Cir. 2025).................................................................19, 21

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014)........................................................................................9

*Puerto Rico v. Franklin California Tax-Free Trust*,
  579 U.S. 115 (2016).....................................................................................8, 9

*Pulsifer v. United States*,
  601 U.S. 124 (2024).....................................................................................6, 7

*R.R. Ret. Bd. v. Alton R. Co.*,
  295 U.S. 330 (1935)......................................................................................25

*Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*,
  No. 25-5129, 2026 WL 1912093 (9th Cir. July 2, 2026) ..............................20

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008)......................................................................................18

*Sickle v. Torres Advanced Enter. Sols., LLC*,
884 F.3d 338 (D.C. Cir. 2018)................................................................8, 9

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)...............................................................................23, 24

*United States v. Jackson*,
390 U.S. 570 (1968).....................................................................................24

*United States v. Sup. Ct. of New Mexico*,
839 F.3d 888 (10th Cir. 2016) ....................................................................21

*United States v. Williams*,
358 F.3d 956 (D.C. Cir. 2004).....................................................................23

*Woodruff v. Peters*,
482 F.3d 521 (D.C. Cir. 2007).....................................................................27

*Wos v. E.M.A. ex rel. Johnson*,
568 U.S. 627 (2013).......................................................................................7

## STATUTES AND REGULATIONS

42 U.S.C. §6291 ............................................................................1, 3, 4, 5, 16

42 U.S.C. §6295..............................................................................................7

42 U.S.C. §6297 ........................................ 2, 3, 6, 7, 10, 11, 15, 16, 17, 25

42 U.S.C. §6311 .................................................................................1, 3, 4, 5

42 U.S.C. §6316............................................................................................17

10 C.F.R. §430.32 ...........................................................................................4

D.C. Code §6-1451.01 ..................................................................................16

D.C. Code §6-1453.01 ........................................ 4, 15, 18, 19, 24, 25, 26

D.C. Conservation Code, Appendix Z, §Z3.1 ...............................................4

## OTHER AUTHORITIES

Oxford English Dictionary Online (2022).....................................................14

Random House Dictionary of the English Language (2d ed. 1987)........................10

# GLOSSARY

EPCA            Energy Policy and Conservation Act

NAECA           National Appliance Energy Conservation Act

DOE             Department of Energy

kBtu            Thousand British thermal units

JA              Joint Appendix

## SUMMARY OF ARGUMENT

There is a short and straightforward path to resolving this case. Rather than wade through every subsidiary issue, the Court can cut to the heart of the question. Even if the District is correct on the lion's share of the interpretive points, EPCA still would at least preempt local regulations setting competing "energy conservation standards," *i.e.*, "performance standard[s] which prescribe[] a minimum level of energy efficiency or a maximum quantity of energy use." 42 U.S.C. §§6291(6)(A), 6311(18)(A). That is precisely what the Clean Buildings Act does. By prohibiting "on-site fuel combustion" in covered buildings, it operates as a 0 kBtu/year energy use standard for EPCA-covered gas appliances. That holds true even under the District's fixed-value conception of "energy use," as no gas appliance rated above 0 kBtu/year will be permitted in covered buildings. EPCA plainly would preempt a 100 kBtu/year or a .00001 kBtu/year standard for those appliances. The same result must follow for the District's 0 kBtu/year standard.

Although not necessary to reach that conclusion, the remaining interpretive points confirm it. The presumption against preemption has no place in an express-preemption case. Inclusion of the term "concerning" broadens EPCA's preemptive reach. EPCA's exception, waiver, and other provisions confirm that Congress was focused on disruptive local regulations like the Clean Buildings Act. And "energy use" and "point of use" refer to actual, real-world concepts.

1

*Amici*'s arguments do not change the result. The Clean Buildings Act does not qualify for the building code exception, which is presumably why the District never invokes it. And while future edge cases may test the limits of EPCA preemption, this is not one of them. As a competing energy conservation standard promulgated in a building code, the Clean Buildings Act falls in the heartland of EPCA's preemption provision.

Lastly, there are no procedural or remedial bars to relief. Plaintiffs meet the standard for a facial challenge, but even if they did not, any concern about the challenge's breadth could be addressed by narrowing the relief. The District's severability arguments fail as well, because deleting the combustion ban would effectively rewrite the statute. The remainder of the Clean Buildings Act could not survive anyway, since it too "concern[s] the energy efficiency [or] energy use" of EPCA-covered gas appliances. 42 U.S.C. §6297(c).

## ARGUMENT

### I.      The Clean Buildings Act would be preempted even under an unreasonably narrow interpretation of EPCA's preemption provision.

The preemption issue may appear complicated, but that is so only if the Court slogs through every subsidiary question on which the parties disagree. If, however, the Court agrees that the Clean Buildings Act operates as a 0 kBtu/year energy use standard for gas appliances in covered buildings, most of those disagreements become moot. So even assuming the District is right on nearly all of them, the Clean

Buildings Act's operation as a competing energy conservation standard regulating covered appliances would result in preemption.

**A.    Any conceivable reading of EPCA's preemption provision would cover a regulation that sets a 0 kBtu/year energy use standard.**

The parties disagree on many subsidiary issues: whether the presumption against preemption applies, *compare* Opening.Br.14-15 & n.5, *with* District.Br.23-25; whether EPCA preemption is limited to "energy conservation standards for covered appliances and a fairly limited realm of additional regulations which operate in a similar manner," District.Br.22 (internal quotation marks omitted), or extends to all regulations "concerning the energy efficiency [or] energy use" of covered products, 42 U.S.C. §6297(c), *see* Opening.Br.35-37; the meanings of "energy use" and "point of use," *compare* Opening.Br.42-47, *with* District.Br.27-29, 35-37; and the importance of EPCA's exception, waiver, and other provisions, *compare* Opening.Br.23-29, *with* District.Br.37-42.

Granting the District all these points would yield a narrow preemption provision, but one that still would preempt laws operating as competing energy conservation standards, *i.e.*, "performance standard[s] which prescribe[] a minimum level of energy efficiency or a maximum quantity of energy use." 42 U.S.C. §§6291(6)(A), 6311(18)(A). Even on the District's understanding of "energy use" and "point of use," and even applying the presumption against preemption, EPCA

3

would at least reach laws prescribing "a maximum quantity of energy use" for covered appliances. *Id.*

The District could not, for example, require gas appliances to have an energy use rating of 100 kBtu/year, as determined by EPCA's test procedures. That would be a textbook energy conservation standard setting "a maximum quantity of energy use." *Id.*; *see also, e.g.*, 10 C.F.R. §430.32(j) (1,770 kBtu/year standard for "Gas Standalone Cooking Tops"). So would a regulation setting any other energy use rating—be it 10,000 kBtu/year, .0001 kBtu/year, or even 0 kBtu/year. Each sets "a maximum quantity of energy use" and thus would be preempted as a competing energy conservation standard.

**B.    The Clean Buildings Act operates as a 0 kBtu/year energy use standard on gas appliances in covered buildings.**

Now consider what the Clean Buildings Act does. While the words "kBtu/year" do not appear in its text, it still sets a kBtu/year limit by prohibiting "on-site fuel combustion" in covered buildings. D.C. Code §6-1453.01(a)(3)(B)(iii); *see also* D.C. Energy Conservation Code, Appendix Z, §Z3.1 (prohibiting "[o]n-site combustion of fossil fuels"). Combustion is how gas appliances consume energy. Translated into EPCA terms, then, no gas appliance rated above 0 kBtu/year is permitted in covered buildings. Any appliance designed to use gas energy at all is banned. The result is a 0 kBtu/year energy conservation standard for all gas appliances in covered buildings.

4

To illustrate, imagine the Clean Buildings Act prohibited "on-site fuel combustion" not for *all* appliances, but only for appliances rated above 100 kBtu/year. That would set "a maximum quantity of energy use" at 100 kBtu/year and would be preempted under any conceivable construction of EPCA. 42 U.S.C. §§6291(6)(A), 6311(18)(A). The only difference here is that the Clean Buildings Act imposes a 0 kBtu/year limit instead. If EPCA preempts anything, it must preempt that direct assault on DOE's monopoly on energy conservation standards.

### C.    The District cannot explain why EPCA does not preempt the Clean Buildings Act's 0 kBtu/year energy use standard.

The District never explains how the Clean Buildings Act operates any differently than a 0 kBtu/year energy conservation standard on gas appliances in covered buildings. Instead, it defends that operation in three ways.

First, the District asserts that the standard's extreme stringency exempts it from preemption, arguing that "because no 'covered product' can operate for a 'cycle' or 'period' on zero energy, the 'energy use' of a 'covered product' must refer to a positive, non-zero 'quantity.'" District.Br.28. That conflates logical coherence with achievability. Nothing is incoherent about an energy use standard a gas appliance cannot meet. Nor is there anything special about zero, which is a "quantity" like any other. *See Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1102 n.4 (9th Cir. 2024) (collecting authorities); *cf. Champion v. Ames*, 188 U.S.

5

321, 358 (1903) ("regulation may sometimes appropriately assume the form of prohibition").

To be sure, no gas appliance "can operate for a 'cycle' or 'period' on zero energy." District.Br.28.[1] But that only means that gas appliances fail the Clean Buildings Act's 0 kBtu/year standard, not that the standard is nonsensical. They also would fail a .00001 kBtu/year standard. Yet that equally unachievable standard would be preempted under the District's view because it is phrased as a "positive, non-zero" quantity, District.Br.28, while the functionally identical 0 kBtu/year standard would escape preemption entirely. Nothing in EPCA supports that arbitrary limitation on its preemptive reach.

Second, the District argues that the Clean Buildings Act falls outside EPCA's preemptive scope because it "does not directly (or indirectly) require appliance manufacturers to do anything" and instead operates "as a construction code." District.Br.29. But EPCA preemption is not limited to manufacturer-facing regulations. If it were, EPCA's carefully crafted exception for certain "building code[s]" would serve no purpose. 42 U.S.C. §6297(f); *see Pulsifer v. United States*, 601 U.S. 124, 143 (2024). That exception "demonstrates that EPCA's preemptive scope extends beyond direct or facial regulations of covered products to at least

---

[1] To clarify the District's characterization of Plaintiffs' position, District.Br.28, that is why a 0 kBtu/year standard is "impossible" for gas appliances to meet, JA328.

6

include [some] building codes." *Berkeley*, 89 F.4th at 1101. So the Clean Buildings Act does not get a free pass merely because it operates at the building level.

Third, the District claims that a regulation prohibiting covered appliances from using a certain "type of energy" does not qualify as a "regulation concerning the energy efficiency [or] energy use" of those appliances. 42 U.S.C. §6297(c); *see* District.Br.30. But it never explains how an outright ban on the use of gas energy differs in any meaningful respect from a 0 kBtu/year energy use standard. To be sure, those are two different ways to phrase the same mandate, but "[p]re-emption is not a matter of semantics." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636 (2013). Rather, "a proper [preemption] analysis requires consideration of what the state law in fact does" and its "operation and effect." *Id.* at 636-37. Here, because the Clean Buildings Act operates as a 0 kBtu/year energy use standard, no amount of semantical contortions can save it from preemption.[2]

The District's bans-are-different approach also is belied by the preemption exception for "regulation[s] prohibiting the use in pool heaters of a constant burning pilot." 42 U.S.C. §§6297(b)(4), (c)(1). If EPCA preemption did not extend to outright bans, then such prohibitions would not be preempted in the first place and the exception would be pure surplusage. *See Pulsifer*, 601 U.S. at 143.

---

[2] Nor does 42 U.S.C. §6295(q)(1)(A)'s requirement that DOE promulgate separate standards for products that use "different kind[s] of energy" somehow sanction 0 kBtu/year standards. *Contra* District.Br.23.

**II.    The District's view of EPCA preemption cannot be squared with the text, structure, history, and purpose of the statute.**

Although not necessary for Plaintiffs to prevail, the District is also wrong on the remaining preemption points.

**A.    The presumption against preemption does not apply.**

The District invokes the presumption against preemption despite the Supreme Court's holding in *Puerto Rico v. Franklin California Tax-Free Trust*, 579 U.S. 115 (2016), that the presumption does not apply in express-preemption cases: "[B]ecause the statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's pre-emptive intent." *Id.* at 125 (internal quotation marks omitted). True, this Court recited the presumption in *Sickle v. Torres Advanced Enterprise Solutions, LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018). But *Sickle* does not represent the Court's interpretation of *Franklin. Contra* District.Br.23-24. Neither the panel nor the parties there even cited *Franklin*, let alone grappled with its holding. Rather, the Court merely recited the presumption in the legal-standards section before conducting an express *and implied* preemption analysis. *Sickle*, 884 F.3d at 346-50. That is hardly noteworthy since the Supreme Court has not disturbed the presumption in implied-preemption cases. And it becomes even less so when considering that this Court did not actually apply the

presumption in the express-preemption part of its analysis. *Id.* at 347-48.[3] Simply put, *Sickle* contains no *sub silentio* holding on how *Franklin* applies to express-preemption cases like this one. *Cf. Angelo v. District of Columbia*, 180 F.4th 324, 332 (D.C. Cir. 2026) ("[D]istinct issues that merely appear in the briefing of a case but are neither decided nor discussed in our decisions carry no precedential weight.").

That remains an open question in this Court. If the Court reaches it, it should join the circuits that have followed the Supreme Court's clear command to not apply the presumption in express-preemption cases. *See* Opening.Br.15.

### B.    "Concerning" is a broadening term.

The District responds to Plaintiffs' discussion of "concerning" by asserting (for the first time) that it may mean "about" rather than "relating to." District.Br.32-33. It dismisses Plaintiffs' contrary authorities as inapposite because they involved "different statutes" and "different contexts." District.Br.32. But to the extent the District suggests that different interpretive rules apply merely because EPCA is a "different statute," that is not a "sound approach to reading statutes." District.Br.32. Rules of interpretation are generally applicable, not idiosyncratic. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014) ("[T]raditional rules of

---

[3] In fact, the presumption played no role in the case at all, as the Court did not rely on it in the implied-preemption part of its analysis either. *Sickle*, 884 F.3d at 348-50.

statutory interpretation … do[] not change because the case involves multiple statutes.").

The District next asserts that "concerning" cannot mean "relating to" in §6297(c) because "[w]hen EPCA's current preemption provision was enacted, the phrase 'related to' had a settled meaning in the preemption context" that "Congress eschewed." District.Br.32. The District is half-right. "Related to" did have a settled meaning then—one synonymous with "concerning." Dictionaries throughout the 20th century used the two terms interchangeably. *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 716 (2018) (collecting authorities). That remained so in 1987, the year NAECA passed. *See, e.g.*, The Random House Dictionary of the English Language 423 (2d ed. 1987) (defining "concern" as "to relate to; be connected with"). The settled meaning of "related to" thus cuts *against* the District's interpretation.

Regardless, whether the operative phrase is "about," "concerning," or "relating to," the Clean Buildings Act falls within EPCA's preemption provision, as any conceivable version of that provision would cover a regulation setting a 0 kBtu/year standard.

### C. The District misunderstands the interpretive importance of EPCA's exception, waiver, and other provisions.

The District also disputes the interpretive importance of EPCA's exception, waiver, and other provisions. It writes off the building code exception, claiming it

10

"has no bearing on this case" and insisting that the "mere fact that a regulation does not satisfy the criteria for a preemption exception does not mean the regulation is preempted." District.Br.16, 38 (internal quotation marks omitted). But that is not Plaintiffs' argument. Opening.Br.48. Instead, it is that the exception illuminates the preemption provision's scope by demonstrating that building codes meeting all seven of its strict requirements would otherwise be preempted in at least some instances. Opening.Br.23-27.

The District protests that the seven requirements do not "come[] into play unless the building code contains a … 'regulation or other requirement' 'concerning the energy efficiency or energy use of [a] covered product.'" District.Br.38 (quoting 42 U.S.C. §6297(f)(3)). True enough, but that overlooks the regulation's impact on the overall code. For example, one requirement is that the code "not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard." 42 U.S.C. §6297(f)(3)(B). So even with the regulation in question included, the code cannot set a standard for a covered product exceeding the relevant federal standard. Two conclusions follow. First, regulations setting competing energy conservation standards—such as a 0 kBtu/year standard—can never qualify for the exception, because they would require exactly that. Second, EPCA preemption cannot be limited to regulations setting energy conservation standards; otherwise the exception would never apply. The former confirms that the

11

Clean Buildings Act strikes at the core of EPCA's preemption provision; the latter shows that preemption sweeps broader than the District would prefer.

In a similar vein, the District accuses Plaintiffs of "melding … [EPCA]'s preemption and waiver provisions." District.Br.41. In truth, Plaintiffs examined those provisions to shed light on the regulations Congress sought to prevent. Opening.Br.27-29; *see Crandon v. United States*, 494 U.S. 152, 158 (1990) (courts look "not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy"). That analysis revealed a deep concern with regulations that complicate the sale, marketing, and servicing of appliances on a national basis and that threaten to replace national uniformity with a patchwork of local regimes. Opening.Br. 27-29.

The District does not dispute that those provisions reflect these congressional concerns. Instead, it offers only non sequiturs. It notes that "some state regulations will be preempted even if they [could qualify for waiver]." District.Br.40-41. Agreed, but that shows only that EPCA preemption reaches regulations that do not directly strike at these core concerns. The District also claims that consideration of the waiver and other provisions creates a "dilemma" and "regulatory void." District.Br.41-42. Not so. Precluding waivers for regulations that fail the statutory requirements creates no "dilemma," and the claimed "regulatory void" is illusory

because preemption does not attach until an applicable federal standard exists. District.Br.41.

### D.    The District misinterprets "energy use" and "point of use."

On "energy use" and "point of use," the District never confronts Plaintiffs' demonstration that the Clean Buildings Act is preempted regardless of which definitions apply. Opening.Br.41-47. In any event, the District is wrong on both definitional points.

As for "energy use," the District does not dispute that §§6295(*l*)(1) and 6292(b)(2) both refer to actual, real-world energy use. District.Br.27. It responds only that those provisions are irrelevant because "both refer to products DOE has not *yet* regulated." District.Br.28. But Plaintiffs have never disputed that "energy use" arises in different contexts in EPCA. That is why those provisions are instructive: like the preemption provision, they demarcate the limits of EPCA's reach. "Energy use" should carry the same meaning across these similar contexts.

As for "point of use," the District throws out technical terms about "site energy" and "source energy" and acts as if that settles the question. District.Br.36. But far more is required to justify a highly technical definition given the rule that "[w]hen a term goes undefined in a statute, [this Court] give[s] the term its ordinary meaning." *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 432 (D.C. Cir. 2023). The better reading is that "point of use" means the point where the product is

13

used, reinforcing the statutory focus on real-world energy use. *See Berkeley*, 89 F.4th at 1101 ("[A]s a matter of ordinary meaning, 'point of use' means the 'place where something is used.'" (quoting Oxford English Dictionary Online (2022))).

  **E. The District's invocation of EPCA opinions from other courts does not cure the defects in its reasoning.**

The District places great weight on decisions from other courts disagreeing with *Berkeley* and upholding gas bans. None binds this Court, of course, so they matter only for the persuasive force of their reasoning. On that score, none of them has grappled with the critical point that a gas ban operates as a 0 kBtu/year energy conservation standard. Debates over "energy use" and whether EPCA preempts only "energy conservation standards" are ancillary where, as here, the law would be preempted even under the narrowest conceivable interpretation of EPCA preemption.

**III. *Amici*'s arguments cannot save the Clean Buildings Act.**

*Amici* raise a few additional arguments, but none moves the needle.

  A. Public Health Law Center ("PHLC") claims that the Clean Buildings Act qualifies for EPCA's building code exception. *See* PHLC.Br.20-30. But the District never invokes the exception and in fact claims that it "has no bearing on this case." District.Br.16. So the Court should not consider this issue. *See Doe v. Blanche*, 172 F.4th 901, 916 (D.C. Cir. 2026) ("We generally do not consider arguments that parties do not make—or, as here, arguments that they disclaim.");

14

*Huerta v. Ducote*, 792 F.3d 144, 151 (D.C. Cir. 2015) ("[O]rdinarily this court will not entertain an *amicus*'s argument if not presented by a party.").

In any event, the Clean Buildings Act does not qualify for the exception. For one, the building code exceptions for both consumer and industrial appliances apply only to regulations "contained in a State or local building code *for new construction*," 42 U.S.C. §§6297(f)(3), 6316(b)(2)(B), whereas the Clean Buildings Act (and thus also the District's code it modifies) applies to both new construction *and* substantial improvements to existing buildings, *see* D.C. Code §6-1453.01(b)(1). That disqualifies it before the other requirements come into play.

PHLC responds by reading the "for new construction" requirement out of existence, insisting that "the regulations themselves do not need to be 'for new construction' alone" so long as they sit in a code with at least one provision aimed at new construction. PHLC.Br.28-29. That would make EPCA preemption trivially easy to evade. A state could set energy conservation standards for covered products in existing buildings—or even promulgate manufacturer-facing regulations—so long as it placed them in a "building code" containing at least one provision that applied to "new construction." The better view is that Congress intended the "for new construction" requirement to actually circumscribe this targeted exception, limiting it to regulations "contained in a State or local building code for new

construction," meaning that the code (and thus also the regulations at issue) applies to new construction and not to existing buildings, manufacturers, or anything else.[4]

The Clean Buildings Act also fails many of the consumer exception's seven requirements. PHLC insists that is no problem because the District's overall building code satisfies them even if the Clean Buildings Act does not. PHLC.Br.23. But that ignores the Clean Buildings Act's effect on the code. Without it, for example, the code might provide "credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding" federal standards on a "one-for-one equivalent energy use or equivalent cost basis." 42 U.S.C. §6297(f)(3)(C). But with it, the code gives no credit to gas appliances exceeding those standards and thus fails this requirement.

Similarly, without the Clean Buildings Act, the code might "not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard." *Id.* §6297(f)(3)(B). But with it, the code runs afoul of this requirement. EPCA defines "energy efficiency" as "the ratio of the useful output of services from a [consumer or industrial appliance] to the energy use [of the appliance]." *Id.* §§6291(5), 6311(3). Because the Clean Buildings Act bars gas

---

[4] PHLC also claims that the Clean Buildings Act applies "to new construction" because "substantial improvements" somehow are "new construction" too. PHLC.Br.29-30. But a "repair" of or an "improvement" to an existing building is, by definition, work on a building that already exists, not the "new construction" of one. D.C. Code §6-1451.01(40).

"energy use" altogether, gas appliances must achieve an impossibly high level of "energy efficiency" to comply, since they would have to produce a "useful output of services" from zero "energy use."

Likewise, without the Clean Buildings Act, the code might specify its "energy consumption or conservation objective … in terms of an estimated total consumption of energy … utilizing an equivalent amount of energy" and "permit[] a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." *Id.* §§6297(f)(3)(A), (F). But the Clean Buildings Act changes that objective: the goal is no longer simply to meet a consumption target, but to do so *without gas appliances*. And builders can no longer choose freely among items to meet it, since gas appliances are off the table.

As for industrial appliances, because the Clean Buildings Act requires an impossibly high level of energy efficiency, it does not qualify for the exception. *See* Opening.Br.51 n.14; 42 U.S.C. §6316(b)(2)(B)(i).

B.    *Amici* also worry that Plaintiffs' view of EPCA preemption would intrude upon the District's police powers, imperiling all sorts of health-and-safety regulations. *See, e.g.*, States.Br.22-25; *see also* District.Br.32, 41. That concern is misplaced. To be sure, delineating the outer bounds of EPCA preemption will involve some edge cases, but this is not one. The Clean Buildings Act is not a zoning ordinance with incidental or peripheral effects on gas appliances or some targeted

17

provision of a fire code. It is a building code—precisely the kind of local regulation EPCA covers—setting a 0 kBtu/year energy use standard on covered gas appliances in many buildings throughout the District. Because that kind of law falls within the core of EPCA's preemption provision, the Court should wait for closer cases to mark its limits. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 585 (2012) ("It is enough for today that wherever that line may be, this statute is surely beyond it.").[5]

C.      *Amici* law professors raise a similar concern about EPCA preemption's effects on utility regulation. Law.Professors.Br.15-17. But the Clean Buildings Act does not regulate gas utilities, which remain free to deliver gas to the meter. It kicks in *after* that point, barring "[o]n-site fuel combustion" of the gas. D.C. Code §6-1453.01(a)(3)(B)(iii). The Court thus need not decide how EPCA preemption interacts with utility regulation. *Cf. Berkeley*, 89 F.4th at 1103 (declining to reach a similar question).

**IV.    There are no procedural or remedial barriers to relief.**

The District's procedural and remedial objections pose no barrier to relief.

---

[5]  When those closer cases arise, the District will not be able to invoke its police powers as a trump card, because there is no police-powers exception to federal preemption. *See, e.g.*, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 374 (2008) ("Despite the importance of the public health objective, we cannot agree with Maine that the federal law creates an exception on that basis, exempting state laws that it would otherwise pre-empt.").

### A. EPCA facially preempts the Clean Buildings Act, but any disagreement on that point goes only to the breadth of the remedy.

The District argues that the Clean Buildings Act is not *facially* preempted. District.Br.25-26. But it does so only by ignoring that the Clean Buildings Act applies at the *building* level, not the individual-product level. "The first step in the proper facial analysis is to assess the state laws' scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The Clean Buildings Act applies to *buildings*, prohibiting "[o]n-site fuel combustion … for the provision of thermal energy to the building." D.C. Code §6-1453.01(a)(3)(B)(iii). The next step is asking whether the "provision at issue" "ha[s] any—or at least not many—constitutional applications." *Newman v. Moore*, 151 F.4th 472, 484 (D.C. Cir. 2025). The Clean Buildings Act cannot apply to any covered building without running afoul of EPCA because its combustion ban sets a building-wide 0 kBtu/year standard for EPCA-covered gas appliances. The result is classic facial preemption.

To be clear, EPCA would preempt the Clean Buildings Act's application even to buildings where the builder does not plan to install EPCA-covered gas appliances because it still would set a 0 kBtu/year standard on those appliances. That the standard would cause no harm in that instance does not mean it escapes preemption. For example, if a federal statute preempts state speed limits below 55 miles per hour,

19

it would still facially preempt a state's 40-mile-per-hour limit for highways even if there were a few highways where no one drives faster than 40 anyway. It is the same with the Clean Buildings Act.[6]

Moreover, Plaintiffs' facial challenge would survive even if the Clean Buildings Act applied at the individual-product level rather than the building level. That is because facial challenges do not necessarily attack all conceivable applications of all of a law's various provisions. *Contra* District.Br.25. If, as the District contends, the Clean Buildings Act escapes facial review merely because it affects non-EPCA-covered products as well, then "states [could] pass facially invalid laws—and add just one outlier valid provision—to deflect facial challenges." *Rinnai Am. Corp. v. S. Coast Air Quality Mgmt. Dist.*, No. 25-5129, 2026 WL 1912093, at *17 (9th Cir. July 2, 2026) (Lee, J., dissenting). That cannot be right.

Rather, a "claim is 'facial' [if] it is not limited to plaintiffs' particular case, but challenges application of the law more broadly." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). Such a claim "reach[es] beyond the particular circumstances of

---

[6] The District claims that Plaintiffs "effectively concede[d]" the facial point below by agreeing that "EPCA 'does not prevent the District from enforcing [the Act] where it impacts only non-covered products.'" District.Br.25-26 (quoting Dkt.38 at 34). But the District omits the next sentence, where Plaintiffs explained that "[a]s a practical matter, it is difficult to imagine circumstances where that would be the case, since even if no covered products are planned for a particular new building project, the [Clean Buildings Act] would apply to prevent their present and future use in that building." Dkt.38 at 34.

these plaintiffs," but the "standards for a facial challenge [apply only] to the extent of that reach." *Id.* Put differently, "facial standards are applied … only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision." *United States v. Sup. Ct. of New Mexico*, 839 F.3d 888, 914 (10th Cir. 2016); *see Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 623-24 (9th Cir. 2024) (evaluating a "facial challenge" to a state law allegedly preempted by the ADA only insofar as it applied to "health care settings").

Here, the "universe of applications contemplated by plaintiffs' claim" is confined to those where the Clean Buildings Act concerns EPCA-covered products.[7] So if the District is right that daylight exists between that limited universe and "all conceivable applications" of the Clean Buildings Act, Plaintiffs would need to meet the facial standard only for the former.[8] And as Plaintiffs' merits analysis demonstrates, there is "no set of circumstances" in which the Clean Buildings Act's 0 kBtu/year standard can validly apply to EPCA-covered products.

---

[7] The District points to JA21-22, JA34, as evidence that Plaintiffs' "facial claim encompasses covered and non-covered products alike," District.Br.26, but Plaintiffs made clear that EPCA preempted the Clean Buildings Act because it bans "federally regulated appliances," JA22, and "concerns the energy use of appliances covered by the federal Energy Policy and Conservation Act," JA34.

[8] Plaintiffs' facial challenge thus differs from the one in *Newman v. Moore*, 151 F.4th 472 (D.C. Cir. 2025), where it was conceded that the challenged provision could be constitutionally applied. *Id.* at 484. Here, by contrast, the Clean Buildings Act's 0 kBtu/year standard on EPCA-covered gas appliances has no valid application.

Any issues regarding the breadth of the facial challenge can be addressed by limiting the relief granted. After all, "the distinction between facial and as-applied challenges … goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Accordingly, the Court can remedy any problem on this score by tailoring its injunction, such as by enjoining enforcement of the Clean Buildings Act only in its applications to EPCA-covered products. *Cf. Berkeley*, 89 F.4th at 1104 ("[I]f a building code concerns the 'energy use' of covered and non-covered products alike, EPCA's preemptive effect is limited to the covered products.").

Lastly, the District submits that Plaintiffs forfeited their facial challenge by failing to contest this "independent basis" for the district court's decision. District.Br.26. No such "independent basis" exists. The district court merely recited the facial-challenge standard in the "Legal Standard" section, JA384, and then summarily stated in the "Conclusion and Order" section that "the Clean Buildings Act is not facially invalid under EPCA," JA398. Whether Plaintiffs met the "no set of circumstances" standard never played any part in the ruling.

### B.   Plaintiffs are entitled to declaratory and injunctive relief against the entirety of the Clean Buildings Act.

The District also argues that Plaintiffs' requested declaratory judgment and injunction "are inequitable and unsound." District.Br.52. Not so. These remedies are well within the Court's powers, and it can enter judgment and grant relief without

22

remanding to address matters the summary-judgment record already establishes. *See United States v. Williams*, 358 F.3d 956, 963 (D.C. Cir. 2004) ("We will not remand a case … if the record conclusively establishes appellant's entitlement to relief.").

The District never disputes that Plaintiffs meet the general requirements for declaratory and injunctive relief. *See* Opening.Br.52-55. Instead, it focuses exclusively on the breadth of those remedies. Barring "enforcement of the Act against anyone," says the District, is "just the sort of overbroad decree that would inflict 'irreparable harm' on the District by preventing it 'from enforcing its policies against nonparties.'" District.Br.52 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 859-60 (2025)). And the District's "statutory severability requirement," it continues, "prevents plaintiffs from using the fossil-fuel provision to take down the entire Clean Buildings Act." District.Br.52. These arguments have several problems.

*First*, Plaintiffs' requested injunction is not "overbroad." *Contra* District.Br.52. Enjoining enforcement of the Clean Buildings Act is precisely what Plaintiffs need for "complete relief." *CASA*, 606 U.S. at 851. Many Plaintiffs and their members are not builders or building owners and so are not directly regulated by the Clean Buildings Act. Rather, it harms them primarily by decreasing demand for their gas-related trades and businesses. *See* JA16-21, JA37-108. The District's imagined injunction—applying only to certain builders or a few select buildings— would neither remediate nor prevent those harms. At best, it would slightly reduce

23

them. The requested injunction thus poses no problem under *CASA*, because even if it incidentally benefits nonparty building owners, it is the only way to "offer complete relief *to the plaintiffs before the court.*" 606 U.S. at 852 (emphasis in original).

*Second*, "the ultimate determination of severability will rarely turn on the presence or absence of … [a severability] clause." *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968). And courts have properly found the District's severability presumption overcome when the occasion calls for it. *See, e.g.*, *Espresso, Inc. v. District of Columbia*, 884 F. Supp. 7, 12 (D.D.C. 1995). This is another such occasion.

Beyond the statutory presumption, the District offers one other reason to sever the gas-combustion provision: that "even without the fossil-fuel provision, the Act would still advance its purposes through its other provisions." District.Br.53. But that would alter the statute's very core. The Clean Buildings Act is built around the "net-zero-energy standard"—a term featured in its title, "Net-zero-energy building code requirements"—and the prohibition on gas combustion is an integral part of that term's statutory definition. *See* D.C. Code §6-1453.01(a)(3)(B)(iii) (defining "net-zero-energy standard" to include the banning of "[o]n-site fuel combustion … for the provision of thermal energy to the building"). So the severance that the District proposes—*i.e.*, blue-penciling that definition—would be no modest judicial

24

undertaking. It would effectively "rewrite [the] statute and give it an effect altogether different from that sought by the measure viewed as a whole." *R.R. Ret. Bd. v. Alton R. Co.*, 295 U.S. 330, 362 (1935). A judicially re-crafted version of a term "so interwoven" in the statute, *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924), could not "function in a manner consistent with the intent" of the drafters, *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987). The Court should decline the District's invitation to assume that legislative function.

*Third*, even assuming the prohibition on gas combustion could be severed, the remainder of the law still would be preempted because the Clean Buildings Act also requires compliance with Appendix Z. *See* D.C. Code §§6-1453.01(a)(3), (b)(2). As Plaintiffs have explained, Appendix Z "concern[s] the energy efficiency [or] energy use" of EPCA-covered gas appliances, 42 U.S.C. §6297(c), by restricting and penalizing them based on their energy use and efficiency, Opening.Br.32-34. So the Clean Buildings Act could not avoid preemption even in its rump form.

The District protests in three ways. On the merits, it points out that "manufacturers would be subject to the same uniform energy conservation standards whether Appendix Z applies or not." District.Br.52. But that would matter only if EPCA preemption were limited to energy conservation standards. It is not. *See supra* p.11. Even though the Appendix Z provisions set no competing energy conservation standard, they "concern[]" covered products' "energy efficiency [or] energy use" by

25

capping the non-renewable energy a building may use and requiring renewable sources to cover 100% of its energy usage. *See* Opening.Br.32-34. In doing so, those provisions impact gas appliances' "energy use" and "energy efficiency"—the former by restricting and penalizing their use of gas energy and the latter by penalizing less efficient and rewarding more efficient gas appliances. *See Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 326 (N.D.N.Y. 2025) (a building regulation that "sets a maximum building-wide energy consumption limit" "would be clearly preempted" as "an indirect regulation concerning the energy use of the covered products that could be used in that building"), *aff'd sub nom. Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 180 F.4th 434 (2d Cir. 2026).

The District also mounts two non-merits attacks. First, it claims Plaintiffs did not preserve their arguments regarding the Appendix Z provisions in their Complaint. District.Br.48-49. But Plaintiffs made clear that their challenge was to the *entirety* of the Clean Buildings Act, *e.g.*, JA34, which necessarily includes the provisions requiring compliance with Appendix Z, *see* D.C. Code §§6-1453.01(a)(3), (b)(2). That is Plaintiffs' claim. New arguments supporting that claim—*e.g.*, that EPCA would preempt the Clean Buildings Act even without its express combustion ban—are not forfeited merely because the Complaint did not spell them out. *See He Depu v. Yahoo! Inc.*, 950 F.3d 897, 904 n.9 (D.C. Cir. 2020) ("[A] plaintiff is not required to include in its complaint every argument that might

26

support its general claims."); *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) ("[O]nce a federal claim is properly presented, a party can make any argument in support of that claim." (internal quotation marks omitted)).[9]

Second, the District contests Plaintiffs' standing to challenge the Appendix Z provisions. District.Br.47. But Plaintiffs need not separately establish standing for this part of their challenge. As the District recognizes, standing is determined on a claim-by-claim basis, District.Br.47, and Plaintiffs' challenge to the Appendix Z provisions is part of the same preemption claim they bring against the Clean Buildings Act as a whole, *see supra* p.26. But even if it could be construed as a new "claim," the harms from those provisions are largely the same as those flowing from the Clean Buildings Act generally. By making it more difficult and expensive to use gas appliances, the Appendix Z provisions reduce demand for gas-related trades and businesses, raise gas prices, and increase construction and operation costs. *See* JA16-21, JA37-108.

---

[9] The District similarly contends that Appellants "doubly forfeited" their "energy efficiency" argument. District.Br.50. Not so. Plaintiffs have always presented that argument as a secondary one relying largely on the same reasoning as their primary "energy use" argument. Dkt.38 at 15 n.4; Opening.Br.19 n.7, 34. Failing to recite those reasons again is not forfeiture. At worst, Plaintiffs' argument has been "couched in terms of a different but closely related theory" of preemption, and thus "fairly embraced the argument" as to energy efficiency. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 380 (1995).

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ J. Mark Little*
J. Mark Little
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Scott Novak
700 K Street NW
Washington, D.C. 20001
(202) 639-1316
scott.novak@bakerbotts.com

Daniel B. Rankin
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for National Association of Home Builders of the United States, Restaurant Law Center, National Apartment Association, Maryland Building Industry Association, and Washington Gas Light Company*

28

BREDHOFF & KAISER, P.L.L.C.

/s/ *Abigail V. Carter*
Abigail V. Carter
805 15th Street, NW, Ste. 1000
Washington, D.C. 20005
(202) 842-2600
acarter@bredhoff.com

*Counsel      for      Philadelphia-Baltimore-Washington Laborers' District Council*

MOONEY, GREEN, SAIDON, MURPHY
& WELCH, P.C.

/s/ *Lauren McDermott*
Lauren McDermott
1920 L Street NW
Washington, D.C. 20036
(202) 783-0010
lmcdermott@mooneygreen.com

*Counsel for Teamsters Local 96*

29

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,451 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

*/s/ J. Mark Little*
J. Mark Little

# CERTIFICATE OF SERVICE

I certify that on August 7, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/ J. Mark Little*
J. Mark Little